Henry D. DODSON and G. Everett Millican, Plaintiffs-Appellants,

v.

William GRAHAM, Jr., etc., et al., Defendants-Appellees,

Metropolitan Atlanta Rapid Transit Authority, Intervenor-Appellee.

No. 71-3545.

United States Court of Appeals, Fifth Circuit.

May 31, 1972.

Rehearing Denied June 29, 1972.

Moreton Rolleston, Jr., Atlanta, Ga., for plaintiffs-appellants.

John Tye Ferguson, Webb, Parker, Young & Ferguson, Atlanta, Ga., for Graham.

R. William Ide, III, Joseph L. Churchill, Huie & Harland, Atlanta, Ga., for Metropolitan Atlanta Rapid Transit Authority.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

COLEMAN, Circuit Judge:

This litigation is concerned with the validity and the outcome of a special election held in Fulton County, Georgia, on November 9, 1971, to determine the will of the voters as to the approval or disapproval of a "Rapid Transit Contract and Assistance Agreement", Georgia Laws 1965, page 2243, as amended. For lack of jurisdiction, the instant action, brought in the United States District Court by Dodson and Millican, was dismissed. We affirm.

As finally certified, there were 53,760 votes in favor of the agreement and 53,299 votes against it. This was a razor thin majority of 461 out of a total of 107,059 votes cast. There had been two previous tabulations, one showing a favorable majority of 2,011 while the other reflected an opposition majority of 282.

Within a few days of the final certification, suits were filed in the Georgia Superior Courts, one in Fulton

County and the other in the adjoining county of DeKalb. The Fulton Superior Court ordered a full recount of the votes. This recount resulted in a majority of 471 in favor of the proposed Rapid Transit Contract and Assistance Agreement, with judgment accordingly. The suit in DeKalb was dismissed for lack of jurisdiction, it there being held that the Fulton County Board of Registration and Elections was the proper defendant in a contest of the November 9 special election.

These cases were appealed to the Court of Appeals of Georgia, where all were either affirmed or the appeals dismissed. [Henderson et al. v. County Board of Registration & Elections, et al.; County Board of Registration & Elections v. Henderson, et al.; Metropolitan Rapid Authority v. Henderson, et al., Ga.App., 190 S.E.2d 633 and Ollilla v. Graham, Supervisor of Elections, etc., 190 S.E.2d 542 (Ga.App.1972)].

The Georgia Court of Appeals held: (1) It was not error for the trial judge to conduct the recount of the ballots without the intervention of a jury; (2) the trial judge properly disregarded alleged irregularities in two precincts where the rejection of the vote in those precincts would not change the results of the election; (3) there was no showing of a sufficient quantity of spoiled ballots, not accounted for, to place the result in doubt; (4) the Fulton County Board of Registration and Elections was the proper defendant in the election contest, and jurisdiction resided in the Superior Court of Fulton County.

The resolution of these non-federal issues by the state courts leaves for our determination in the case now before us only one fundamental question: Was the special election of November 9, 1971 conducted in violation of § 5 of the Voting Rights Act, 42 U.S.C., § 1973c (1970)[1]? See, e. g., Allen v. State Board of Elections, 1969, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1.

Appellants primarily contend that the District Court had jurisdiction of their

---

[1]. The Voting Rights Act of 1965, passed by the Congress of the United States became effective August 6, 1965. The State of Georgia is one of the states in the Union covered by the provisions of the Act. In its entirety, § 5 of the Voting Rights Act of 1965 (Title 42, United States Code, § 1973c) provides:

"Whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the first sentence of section 1973b (b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, or whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the second sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1968, such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, standard, practice, prerequisite, or procedure: Provided, That such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceedings if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, except that neither the Attorney General's failure to object nor a declaratory judgment entered under this section shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure. Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court."

election contest suit under § 5 and that federal three-judge district court jurisdiction over their suit should be entertained because the Georgia law of 1967 transferring the duties of the Ordinary of Fulton County under the Georgia Election Code to the Fulton County Board of Elections was not submitted to the Attorney General of the United States by the *Attorney General of Georgia,* but by the County Attorney for Fulton County.

Appellees contend that they complied with § 5 in that the state law, transferring the duties of the Ordinary, was submitted to the United States Attorney General by the Fulton County Attorney, with no ensuing objections from the Attorney General.

Furthermore, appellees contend that § 5 of the Voting Rights Act of 1965 is inapplicable since it was stipulated at trial that the 1967 Georgia law did not have the effect of denying any person the right to vote because of race or color. We find it unnecessary to decide this latter point.

We thus come to the dispositive question:

Has the 1967 Georgia law transferring the duties of the Ordinary of Fulton County under the Georgia Election Code to the Fulton County Board of Elections been "subjected to the required federal scrutiny" as provided by § 5 of the Voting Rights Act of 1965?

Traditionally, the conduct of elections in Georgia on a local level has been entrusted to the Ordinary of each county. The authority to administer elections was continued in the Ordinary by the Georgia Election Code, approved June 24, 1964 [Ga.L. Extra Session 1964, p. 26, codified as Title 34 of the Georgia Code]. This was the Georgia law in effect prior to November 1, 1964.

On April 18, 1967, the Georgia General Assembly approved an Act [Ga.L.1967, p. 3211] which provided that in

"each county of this State having a population of more than 500,000 according to the 1960 United States decennial census and any future such census"

the duties and powers encumbent upon the Ordinary by virtue of the Georgia Election Code would be vested in a County Board of Elections.

It is undisputed that Fulton is the only Georgia County with a population of more than 500,000.[1A]

Following the enactment of the 1967 Georgia law and an amendment thereto [Ga.L.1968, p. 2867], Harold Sheats, the County Attorney of Fulton County, wrote the Attorney General of the United States on April 18, May 16, and August 19 (1968), requesting approval of the law.

*First Letter*

April 18, 1968

The Attorney General
Department of Justice
Washington, D. C.

Dear Sir:

The Attorney General of Georgia has suggested that we write you concerning certain bills adopted by the Legislature of Georgia, and which relate to voting procedure.

While we do not consider that any of these bills relate to civil rights or to "voting qualifications or prerequisites to voting, or standard, practice, or procedure with respect to voting", the Attorney General feels that you should be advised of same, and your approval or disclaimer of interest obtained.

[1A]. This result is, by no means accidental. The Georgia Legislature has granted Georgia cities only a very limited power of home rule. See Ga.Code Ann. §§ 69–1015 to –1017 (1967); Ga.Code.Ann. § 1018 (Supp.1971). The Legislature remedies this lack of municipal power to some extent by promulgating "population bills", such as that involved in the instant case, which are used to govern individual cities. *See generally* Dougherty County v. Bush, 227 Ga. 137, 179 S.E.2d 343 (1971); McAllister v. State, 220 Ga. 570, 140 S.E.2d 828 (1965).

Therefore, your consideration and immediate advice on the subject will be appreciated.

Yours very truly,

Harold Sheats
County Attorney

HS/v

Copy: Hon. Arthur Bolton
The Attorney General
State of Georgia

Attachments:
Copy of House Bill No. 1224
Copy of Georgia Laws 1967, pp. 3211–3215

*Second Letter*

May 16, 1968

The Attorney General of the
United States
Department of Justice
Washington, D. C.

Dear Sir:

We have recently written you on several occasions, submitting copies of legislation and procedures in connection with the Board of Elections of Fulton County. We have been advised to do so by the Attorney General of Georgia because of the recent voting rights legislation.

We have heard nothing from your office and are not aware whether or not this legislation and these procedures have the approval of your office. In our opinion the legislation and the procedures are designed only to improve the election process, and have not the slightest taint of discrimination.

Inasmuch as the Department of Justice has been so active in matters of this nature, we feel you should at least respond to our requests for approval or disapproval while your opinion on the subject can be effective.

Yours very truly,

Harold Sheats
County Attorney

HS/v

*Third Letter*

August 19, 1968

Mr. Stephen J. Pollak
Assistant Attorney General
Civil Rights Division
Department of Justice
Washington, D. C.

Dear Mr. Pollak:

Some weeks ago we forwarded to you a copy of the 1967 Statute of the General Assembly of Georgia, creating an Election Board in Fulton County. The function of the Board is to facilitate and make more efficient the election process, exclusive of registration which is handled by the Board of Registrars.

We have received approval from your office concerning other matters of this nature, reported to you, but have not specifically obtained any statement from you concerning the creation and functions of the Election Board.

We assume that you have no objections since none has been stated. However, for the sake of the record, we request your consideration and a statement from you concerning the existance or non-existance of objection on your part.

Yours very truly,

Harold Sheats
County Attorney

HS/v

After these persistent efforts by the County Attorney, the following response was received:

Washington, D. C.
October 30, 1968

Mr. Harold Sheats
County Attorney
504 Courthouse
Atlanta, Georgia, 30303

Dear Mr. Sheats:

This is in reply to your letters of April 18, 1968 and August 19, 1968, concerning the submission of H. B. 511, as amended by H. B. 1224, an act of the 1967 General Assembly of Georgia creating an election

board in counties having a population in excess of 500,000. I apologize for the delay in replying to you.

The Attorney General has no objection to the enforcement of either H. B. 511 or H. B. 1224. You are probably aware, however, that Section 5 of the Voting Rights Act of 1965 provides that failure to object does not bar a subsequent action to enjoin the enforcement of either of these acts if they are shown, in operation, to violate the Fifteenth Amendment or other Federal laws securing the right to vote.

> Sincerely,
> Stephen J. Pollak
> Assistant Attorney General
> CIVIL RIGHTS DIVISION

In the light of the foregoing, we hold that the transfer of duties to the Fulton County Election Commission was submitted to the Attorney General of the United States and that he manifested no objection to it.

Appellants say, however, that the submission was invalid because it was made by the *county attorney* rather than by the state attorney general.

We are of the opinion that the answer to this contention is to be found in the Regulations promulgated by the United States Attorney General, 36 Fed. Register 18187 (1971):

> "Section 5 requires that, prior to enforcement of any change affecting voting, the State or political subdivision which has enacted or seeks to administer the change affecting voting must obtain either a judicial or an executive determination that denial or abridgment of the right to vote on account of race or color is not the purpose and will not be the effect of the change.

> \*　　\*　　\*　　\*ᵒ　　\*　　\*

> "Changes affecting voting shall be submitted by the chief legal officer or other appropriate official of the State or political subdivision in which the change is proposed to be effective. When one or more counties within a State will be affected, the State may submit a change affecting voting on behalf of the covered county or counties."

Fulton County was the only Georgia county or political subdivision affected by the 1967 Act.

Fulton County was the only Georgia county or political subdivision charged with the responsibility of administering the change ordered by the 1967 Act of the General Assembly.

The County Attorney of Fulton County diligently and persistently over a period of several months sought the approval or disapproval of the Attorney General of the United States relative to the 1967 Georgia law. Moreover, he acted at the suggestion of the state attorney general.

The Attorney General of the United States, on October 30, 1968, discharged his responsibility under § 5 by notifying the County Attorney that the 1967 Georgia law had been approved.

This amounted to compliance with the federal statute and with the regulations promulgated thereunder. The second contention of appellants cannot be sustained.

We agree with the District Court that the record is bereft of anything that could possibly be construed to constitute intimidation, threats, or coercion (or an attempt at such) within the meaning of § 11(b) of the Voting Rights Act of 1965, 42 U.S.C., 1973i(b).[2]

The judgment of the District Court dismissing the complaint is

Affirmed.

---

2. Section 11(b) of the Voting Rights Act of 1964, 42 U.S.C., § 1973i(b). Section 1973i(b) provides:

"No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote, or intimidate, threaten, or coerce any person for exercising any powers or duties under section 1973a(a), 1973d, 1973f, 1973g, 1973h, or 1973j(e) of this title."